IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH VICTOR JOHNSON,

      Plaintiff,                           No. CIV S-09-1603 GGH

   vs.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

      Defendants.                        ORDER

_____/

*Introduction and Summary*

        Plaintiff, who coincidentally has the same initials as his attorney, is a person with a sporadic work record over the years who does not qualify for Social Security (Title II) benefits on account of uninsured status. He therefore filed for Supplemental Security Income (Title XVI) benefits on June 7, 2007, alleging a disability onset of April 2003. He suffers from physical and mental afflictions which will be detailed below. The ALJ in this case did a creditable job in reviewing the evidence of ailments, which for the most part, appeared to have favorably responded to medical treatment; however, he directly violated a holding of the Ninth Circuit in not performing a credibility analysis with respect to a lay witness, and also erred in not assigning any limitations to plaintiff's residual functional capacity based on right hand carpal tunnel

1

syndrome.  For these reasons, the undersigned grants plaintiff's motion for summary judgment, denies the Commissioner's cross-motion, and remands for a re-analysis.[1]

*Background*

Thirty-seven years old at the time of the ALJ's decision, plaintiff sought disability benefits based on hepatitis C, carpal tunnel syndrome, asthma, and depression with an inability to get along with people.  He was later diagnosed with bipolar symptoms occasioned by a prison sentence.  As his case progressed through the administrative process, plaintiff reported that his mental symptoms had worsened: "The voices in my head got louder;" "I can't be around people without wanting to shed their blood;" "I can't stand to be around people, I want the world to die."  Tr. 145.  However, plaintiff's condition was not seen as serious by consulting physicians as plaintiff's statements, on their face, made them appear, and in any event, medication worked to some degree to quell such thoughts.  Plaintiff's hepatitis C was found to be essentially cured.  Tr. 16-18.  Plaintiff's carpal tunnel syndrom remained a severe impairment.  In sum, the ALJ specifically found:

> 1. The claimant has not engaged in substantial gainful activity since June 7, 2007, the date he protectively filed his application (20 CFR 416.971 *et seq*.)
>
> 2. The claimant has the following severe impairments: hepatitis C, status post combination peg-interferon ribavirin treatment, bilateral carpal tunnel syndrome, status post carpal tunnel release surgery, post-traumatic stress disorder and bipolar disorder with antipersonality disorder traits (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

---

[1] This case is before the undersigned pursuant to the consent provisions of 28 U.S.C. § 636(c).

perform light work as defined in 20 CFR 416.967(b) except the claimant retains the residual functional capacity for substantially all of the full range of light work, except that he has mental limitations that preclude working with more than simple job and uncomplicated job instructions and that preclude working with more than occasional contact with the public.

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on August 5, 1971 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  (20 CFR 416.963).

7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since June 7, 2007, the date the application was filed (20 CFR 416.920(g)).

*Issues*

1. The ALJ erred by failing to make adequate findings regarding the nature and severity of plaintiff's physical and mental impairments and limitations;

2. The ALJ erred by improperly resolving conflicts between the opinions of the examining and non-examining physicians and rejecting the treating psychiatrist's opinion;

3.  Substantial evidence does not support the ALJ's Findings that plaintiff's allegations of having severe subjective complaints and limitations were not credible;

4. Substantial evidence does not support the ALJ's findings that plaintiff had the residual functional capacity to perform substantially a full range of light work.

\\\\\

3

*Discussion*

The court will focus only on two issues which require a remand to the Commissioner for further work-up. The first issue concerns the non-analysis of the lay evidence; the second concerns the lack of analysis regarding right hand carpal tunnel syndrome in the residual functional capacity context.

    A. <u>Lay Testimony</u>

The lay testimony of Ed Kincaid, plaintiff's uncle, appears at Tr. 127-134. The ALJ recounted this testimony at Tr. 10. Essentially, Mr. Kincaid painted a picture of a person who could do next to nothing and who had serious mental problems which made his ability to get along with other persons very problematic. However, the ALJ never rejected or accepted the lay testimony – he did nothing with it whatsoever. Plaintiff notes this error at page 26 of his brief.

It is undisputable error for the ALJ not to have adjudicated the credibility of the third party witness. <u>Robbins v. Social Security Admin</u>, 466 F.3d 880, 885 (9th Cir. 2006). In <u>Stout v. Commissioner, Social Security Admin.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006), the court held:

> In light of these cases, we hold that where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.

There is no doubt that plaintiff suffers from a mental illness, and some physical problems, that could account for the observations of Mr. Kincaid. The undersigned can only say that in *crediting the testimony as true*, the seriousness of the symptoms observed require a finding that nearly every ALJ would find them important in reaching a result, and the facts alleged would persuade many ALJs to reach a final determination at odds with the one reached here.

/////

4

   Moreover, nothing in <u>Stout</u> permits the court to assume that the ALJ would make the same credibility findings for lay testimony as were made for plaintiff. If that were true, the <u>Stout</u> requirement to credit the testimony as true would have no effect at all.

  B. <u>Residual Functional Capacity</u>

   The ALJ found that plaintiff had bilateral carpal tunnel syndrome, and that such was a "severe" impairment at step 2 of the sequential analysis. Although the ALJ correctly viewed the surgery on the left hand to be ultimately successful, little mention of the right hand problem was made in the rest of the analysis, and no discussion was had as to whether this problem reduced the number of jobs which plaintiff could perform by virtue of a grids analysis, or whether a vocational expert was necessary to make this determination.

   After EMG testing, plaintiff was found to have objective signs of right handed carpal tunnel syndrome. Tr. 267. Surgical evaluation was advised. <u>Id</u>., Tr. 271. Apparently, no surgery has been performed. He was assessed "limited" manipulative abilities. Tr. 230. "The claimant has occasional manipulative limitations on reaching, handling, and grasping because of the history of right carpal tunnel syndrome and decreased grip strength." Tr. 40.

   The ALJ found that from an exertional standpoint, plaintiff could perform the full range of light work. Tr. 25. However, he also realized that plaintiff had non-exertional impairments which would erode the ability of plaintiff to perform all jobs at the light or sedentary level. <u>Id</u>. However, in assessing the non-exertional impairments, the ALJ considered only plaintiff's mental problems. No mention was made of any limitations occasioned by manipulative limitations.

> Had the ALJ credited Dr. Greenleaf's opinion that Widmark's thumb restricted his ability to perform fine manipulation, his RFC finding would not have coincided exactly with the "full range" of light work. The full range of light work includes unskilled, sedentary jobs. See 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."); 20 C.F.R. pt. 404, subpt. P, app. 2, rule 202.00(a) (providing that the full range

5

> of light work "includes the functional capacity to perform sedentary as well as light work"). "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10, 1983 WL 31251, at *5. Crediting Dr. Greenleaf's opinion would therefore have necessitated finding that Widmark's ability to perform many unskilled, sedentary jobs was limited. See id.; see also SSR 85-15, 1985 WL 56857, at *7 ("[T]he loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work.").
>
> Such a finding would have fallen outside the exact criteria used in the Guidelines, barring the ALJ from relying on them alone and requiring the testimony of a vocational expert. *See Tackett*, 180 F.3d at 1103-04; *Jones*, 760 F.2d at 998 (explaining that the Guidelines may not be used alone where a claimant has a non-exertional, e.g., manipulative, impairment limiting his ability to work); see also SSR 85-15, 1985 WL 56857, at *7 ("The varying degrees of loss [of fine manual dexterity] which can occur may require a decision-maker to have the assistance of a V[ocational] S[pecialist]."). Therefore, the ALJ was not permitted to use the Medical-Vocational Guidelines without the testimony of a vocational expert. *Tackett*, 180 F.3d at 1104; *Jones*, 760 F.2d at 998.

Widmark v. Barnhart, 454 F.3d 1063, 1070 (9th Cir. 2006).

While it is true that not every "severe," non-exertional impairment will preclude use of the grids, Desrosiers v. Sec. Health and Human Services, 846 F.2d 573, 577 (9th Cir. 1988), at the very least, the ALJ must discuss why it is not so. Here, the record reflects a "severe" non-exertional impairment going to plaintiff's manipulative abilities, and the degree to which this impairment affected plaintiff's residual functional capacity was left hanging. This is error which requires remand.

### C. Miscellaneous Issues

The undersigned does not believe plaintiff's other points to have merit. However, the court does not have time to write lengthy advisory opinions on issues which ultimately have no effect on the need to remand. Suffice it to say here that, aside from the lack of analysis regarding lay testimony, the ALJ did take a hard look at the record, especially the record on mental issues, and came to the conclusion from a "longitudinal standpoint" that plaintiff's

improvement with treatment/medication did not require that these ailments, in a younger individual, would have disabling consequences. The ALJ correctly discounted the treating physician's opinion on plaintiff's limitations because it failed to take into account the improvements medication made to plaintiff's problems. Plaintiff's snapshot references to the contrary do not take into account the record as a whole.

*Conclusion*

Plaintiff's motion for summary judgment (Docket # 15) is granted for the reasons set forth above, and the Commissioner's cross-motion for summary judgment (Docket # 16) is denied. The case is remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) for work-up in accordance with the opinion above.[2]

DATED: 09/15/2010

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

johnson1603.ss

---

[2] Nothing herein precludes the ALJ on remand from revisiting the other findings should subsequent findings on the third party lay testimony and/or the manipulative impairment indicate that they should be reconsidered.

7